CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

August 14, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ E. Jones
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| NORTHERN VIRGINIA HEMP & AGRICULTURE, LLC et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 7:26-cv-00615 |
| v. | ) ) | |
| GOVERNOR ABIGAIL SPANBERGER et al., | ) ) ) | By: Hon. Robert S. Ballou United States District Judge |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Plaintiffs are seven Virginia businesses engaged in the processing, manufacture, distribution, and/or retail sale of hemp-derived products containing tetrahydrocannabinol ("THC"). On June 29, 2026, Governor Spanberger signed into law HB 30, which implements various restrictions on the sale of hemp. In particular, the legislation eliminates the "25:1 ratio" that presently allows a hemp product to exceed two milligrams of total THC if the product contains 25-parts cannabidiol ("CBD") for every one-part THC. Approximately seven weeks after the passage of HB 30, beginning August 15, 2026, a product with more than two milligrams of total THC per package cannot be produced or sold as a hemp product in Virginia. Plaintiffs claim this change will have a significant impact on the hemp industry, and they seek to enjoin Defendants from enforcing the statutory amendments and their August 15 effective date, moving for a temporary restraining order and a preliminary injunction. Dkts. 4–5.

In part, Plaintiffs complain about the lack of guidance from current officials as to how participants in the hemp industry can comply with the new law while maintaining viable businesses. It should be of little surprise that many of Plaintiffs' claims relate to the attendant

complications and unintended consequences that rushed legislation creates. *See HW Premium CBD, LLC v. Reynolds*, 742 F. Supp. 3d 885, 892 (S.D. Iowa 2024). But it is not the role of this Court to second-guess the Virginia legislature in setting an effective date for the new law. The Court is limited to determining whether the law violates Plaintiffs' constitutional rights and whether Plaintiffs are entitled to the extraordinary remedy of enjoining its effective date. On the record before the Court, I conclude that Plaintiffs have not met their burden for the extraordinary relief they seek, and their requests for a TRO and a preliminary injunction are **DENIED**.

## I.    Background

### A.  Federal Regulatory Background

The federal Controlled Substances Act classifies marijuana as a Schedule I controlled substance. *See* 21 U.S.C. §§ 802(16), 812(c), Sched. I(c)(10). Before 2018, federal law generally treated cannabis and its derivatives, including hemp, as marijuana under the Controlled Substances Act and prohibited the possession, manufacture, and distribution of marijuana, subject to limited statutory exclusions.

Congress materially altered that framework and the treatment of hemp through the Agriculture Improvement Act of 2018, Pub. L. No. 115-334, 132 Stat. 4490 (2018), known as the 2018 Farm Bill. Among other things, the 2018 Farm Bill defined hemp as the plant *Cannabis sativa L.* and its parts, including derivatives, extracts, cannabinoids, and other specified substances, containing no more than 0.3 percent delta-9 THC on a dry-weight basis. 7 U.S.C. § 1639o(1). Congress then excluded hemp from the federal definition of marijuana under the Controlled Substances Act. *See* 2018 Farm Bill §§ 10113, 12619; *see also* 7 U.S.C. § 1639o(1); 21 U.S.C. § 802(16)(B)(i). Thus, the 2018 Farm Bill distinguished between marijuana, which remained a controlled substance, and hemp, which no longer fell under the

2

Controlled Substances Act's definition of marijuana if it satisfied the statutory standards set for industrial hemp.[1]

### B. Virginia's Regulation of Hemp Products

Virginia subsequently enacted legislation regulating consumable hemp products. In 2023, the General Assembly enacted Senate Bill 903 and House Bill 2294, which established additional restrictions on hemp-derived products sold at retail in Virginia. *See* 2023 Va. Acts chs. 744, 794. Among other provisions, the 2023 legislation required retail-sold industrial hemp extracts to contain no more than 0.3 percent total THC and generally no more than two milligrams of total THC per package. The law, however, created an exception, allowing the sale of products containing hemp extract with more than two milligrams of total THC per package if the product contained an amount of CBD at least 25 times greater than the amount of total THC. Va. Code § 3.2-5145.4. This is commonly known as the 25:1 ratio or exception.

In 2026, the General Assembly passed additional legislation governing the hemp and marijuana markets. The legislation arose as part of negotiations in the General Assembly and with the Governor after the conclusion of the regular legislative session as lawmakers worked to enact a biennial budget bill for the Commonwealth. Most notably, the amendments enacted through the budget legislation, House Bill 30, impose new restrictions on consumable hemp products. HB 30 eliminates the 25:1 CBD-to-THC exception and limits the sale of products

---

[1] On November 12, 2025, Congress enacted the Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026 "(2026 Extensions Act"), Pub. L. No. 119-37, 139 Stat. 558. Section 781 of that Act amended the federal definition of hemp to further restrict hemp-derived cannabinoid products, including a limit of 0.4 milligrams of combined total THC per container. *See* 2026 Extensions Act, § 781; 7 U.S.C. § 1639o. The amendments are set to take effect on November 12, 2026, but may be delayed until at least December 11, 2026, pending passage of the continuing resolution by Congress and approval of the President.

containing industrial hemp extract to no more than two milligrams of total THC per package. Va. Code §§ 3.2-5145.4, 3.2-4112, 3.2-4126. Consequently, hemp-derived products exceeding the two-milligram threshold will, in effect, fall within Virginia's statutory definition of marijuana and be regulated as such. These provisions become effective August 15, 2026.

The amendments also establish a new statutory framework for regulated hemp products under the Virginia Cannabis Control Authority beginning July 1, 2027. The legislation transfers significant responsibility for regulated hemp products from the Department of Agriculture and Consumer Services to the Cannabis Control Authority and establishes a regulated hemp product retail facility registration system. *See* Va. Code §§ 4.1-1700–1704.

At the same time, HB 30 establishes a regulated adult-use marijuana market in Virginia. Beginning July 1, 2027, the Cannabis Control Authority will administer a licensing system for marijuana establishments, including cultivation facilities, processing facilities, and retail stores. *See* Va. Code § 4.1-600. The statute authorizes a retail marijuana store licensee to purchase or take possession of marijuana and marijuana products from licensed marijuana establishments and sell them to consumers, subject to the requirements of the Cannabis Control Act. *See* Va. Code § 4-1-802. The Cannabis Control Authority may begin accepting license applications on February 1, 2027, and may begin issuing licenses on May 1, 2027. 2026 Va. Acts 859, enactment cl. 15.

### C.  Procedural History

Plaintiffs consist of seven Virginia businesses engaged in the hemp industry. Each Plaintiff processes, manufactures, sells, or otherwise distributes hemp-derived products

containing THC. Defendants are Virginia officials or entities responsible for administering or enforcing the challenged statutory scheme.[2]

Plaintiffs filed this action on July 31, 2026 and moved for a TRO and a preliminary injunction on the same date. They seek an order enjoining and restraining Defendants from enforcing the challenged statutory amendments and their August 15 effective date. A hearing was held on the motions on August 12, 2026, where the Court received limited evidence bearing on the parties' respective positions. Particularly relevant here, Plaintiffs presented testimony from five witnesses who owned and operated hemp-related businesses concerning the effect of the amendments on their businesses and existing inventory. Defendants submitted the 2022 Report of the Joint Commission on Cannabis Oversight Task Force to Study the Impact on Industrial Hemp and Its Products, which addresses health and safety concerns of THC-containing hemp products. Dkt. 36-2 at 4–85.

## II.      Standard of Review

Federal Rule of Civil Procedure 65 authorizes federal courts to issue temporary restraining orders and preliminary injunctions. "The standard for granting either a TRO or a preliminary injunction is the same." *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) (citations omitted). Both are "extraordinary remedies involving the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (citation omitted). The movants bear the burden to establish that (1) they are likely to succeed on the merits of their case; (2) they are likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of the equities

---

[2] For purposes of the present motion, the Court need not distinguish between Defendants except to the extent necessary to determine whether a particular Defendant has authority to enforce the challenged provisions or whether the requested relief is properly directed to that Defendant.

5

tips in their favor; and (4) an injunction would be in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997) (citation omitted).

### III.    Analysis

#### A.  Likelihood of Success on the Merits

Plaintiffs argue the statutory amendments in HB 30 violate the Takings Clause of the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. When a complaint alleges multiple causes of action, a plaintiff need only show a likelihood of success on one claim to justify preliminary injunctive relief. *See Doe v. Noem*, 783 F. Supp. 3d 907, 921 (W.D. Va. 2025) (citations omitted).

##### 1.  Regulatory Taking

The Fifth Amendment, applied to States through the Fourteenth Amendment, provides that private property shall not be taken for public use without just compensation. U.S. Const. amend. V. While the Supreme Court has recognized several distinct categories of takings claims, I find that Plaintiffs' claim does not readily fall within any of those categories.

*First*, HB 30 does not allow the State to effect a physical taking. A physical taking occurs when the government occupies property or physically takes possession of property. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147–48 (2021). HB 30 does neither. Instead, the challenged provisions merely impose restrictions on the sale of certain property. The statute does not require Plaintiffs to surrender, transfer, or destroy their existing inventory, nor does it impose a general prohibition on the possession of non-compliant products. At most, Plaintiffs have shown the challenged legislation may substantially restrict their ability to commercially use their

existing inventory. Because these restrictions do not constitute a physical appropriation of Plaintiffs' property, they cannot establish a physical taking.

*Second*, HB 30 does not eliminate "all economically beneficial or productive use" of property. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992). The "total takings" test established in *Lucas* is principally concerned with regulations that render real property economically worthless. Distinguishing this case from *Lucas*, Plaintiffs' alleged loss concerns specific items of personal property—hemp products that cannot be sold in Virginia after August 15. Further, even accepting Plaintiffs' allegation that the vast majority of their current inventory will no longer be lawful to sell, the challenged statute does not render Plaintiffs' businesses or their property—real or personal—wholly without economic value. Many Plaintiffs have other business lines not affected by the new statutory scheme, and at least some have sold portions of their inventory that will become subject to the new restrictions. The record thus does not establish the complete deprivation of economically beneficial use necessary for a categorical taking under *Lucas*. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 330 (2002) (explaining that *Lucas* is reserved for the extraordinary circumstance in which no productive or economically beneficial use remains).

*Third*, a regulatory action taken under the government's police power is generally not considered a compensable taking under the Takings Clause. As the Supreme Court has long recognized, the government may prohibit harmful property uses without paying compensation. *See Mugler v. Kansas*, 123 U.S. 623, 668–69 (1887); *Bennis v. Michigan*, 516 U.S. 442, 452 (1996) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." (citations omitted)).

Several courts have considered requests for injunctive relief where states have changed hemp regulations limiting the amount of THC that is legal in products sold for human consumption. Without exception, the courts to have considered whether such a change in law effects a regulatory taking have found that the plaintiffs were unlikely to succeed on the merits of their regulatory taking claim as these laws and regulations are not deemed a taking or appropriation of property for the public benefit. *See Green Room LLC v. Wyoming*, 157 F.4th 1196, 1212 (10th Cir. 2025) (explaining that Plaintiffs' investment-backed expectations "must be tempered by recognition of the reality of the government's police powers" and that the Supreme Court has repeatedly rejected takings claims in the similar context of the regulation of alcohol); *HW Premium CBD, LLC*, 742 F. Supp. 3d at 909; *Hemp Quarters 605 LLC v. Noem*, No. 3:24-CV-03016-ECS, 2024 WL 3250461, at *7 (D.S.D. June 29, 2024). Likewise, here, the Commonwealth of Virginia acted under its police power to enact legislation it believes to be in the interests of promoting the health and welfare of Virginia citizens, and it is not this Court's role to second-guess or overturn such a decision.

Even upon evaluating the regulation to determine whether it goes "too far," *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922), Plaintiffs have not shown a likelihood of success under the well-accepted *Penn Central* framework. Under *Penn Central Transportation Co. v. City of New York*, courts consider three factors in determining whether a regulatory taking has occurred: (1) the economic impact of the regulation, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action. 438 U.S. 104, 124 (1978). In this case, the first factor appears to be mixed. Plaintiffs allege that most of their existing inventory will become unlawful to sell in Virginia, and the resulting loss of inventory value and sales revenue will be substantial. However, at least some

8

Plaintiffs have sold portions of the affected inventory, and Plaintiffs' claimed losses may be attributed at least in part to the changing federal regulatory landscape rather than HB 30, *see infra* note 1. The second factor also does not clearly favor Plaintiffs. To establish a taking, a plaintiff must have more than a unilateral expectation that existing law will remain unchanged. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005–06 (1984). Here, Plaintiffs entered and invested in a heavily regulated and rapidly evolving industry. Federal and state governments have repeatedly altered the legal status and regulatory treatment of hemp-derived THC products. Against that backdrop, Plaintiffs' expectation that their products would remain lawful for sale indefinitely is not obviously reasonable. Lastly, the character of the governmental action weighs against finding a taking. HB 30 does not purport to appropriate Plaintiffs' inventory for a public use but instead represents an exercise of the State's regulatory authority to determine the circumstances under which certain THC-containing products may lawfully be sold.

For these reasons, Plaintiffs have not shown a likelihood of success on their Takings Clause claim.

### 2. Due Process

The Due Process Clause prohibits a State from depriving a person of property without due process of law. U.S. Const. amend. XIV. The process due depends on the nature of the governmental action. The Supreme Court has long distinguished between individualized adjudicative decisions, which ordinarily require notice and an opportunity to be heard, and generally applicable legislative decisions, which ordinarily do not require individualized hearings. *See Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915); *Minnesota State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 283–84 (1984).

Plaintiffs contend that they possess a protected property interest in their inventory, businesses, and existing licenses. They argue that HB 30 deprives them of that interest without constitutionally adequate process because the General Assembly passed the legislation and the Governor signed it into law without the opportunity to testify at a public hearing.[3] The evidence presented at the hearing showed that HB 30 was the legislative budget vehicle through which the General Assembly considers the biennial budget of the Commonwealth. In 2026, resolution of the budget came through the budget conference committee, and the portions of the Conference Report affecting the hemp industry were revealed around mid-June.

Nonetheless, the nature of how HB 30 was passed does not change the fact that it is a legislative enactment of general applicability, not an individualized governmental adjudication of Plaintiffs' rights. The General Assembly made a policy determination concerning the regulation of THC-containing products and applied that determination to the industry as a whole. Because Virginia was not constitutionally required to give each hemp business an opportunity to contest HB 30 before its enactment, Plaintiffs are unlikely to succeed on their due process claim.

### 3. Equal Protection

The Equal Protection Clause directs "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Where, as here, a statute neither burdens a fundamental right nor employs a suspect classification, rational basis applies. *See Charm City Hemp, LLC v. Moore*, No. 1:25-CV-01744-JRR, 2025 WL 2165173, at

---

[3] At the hearing, Charlie Jackson, a lobbyist for the Cannabis Small Business Association, testified that, during the period leading up to the enactment of HB 30, he met with budget conferees—including legislators and their staff—and communicated with members of the Association concerning the legislation. Throughout, Jackson advised members of the General Assembly as to the Association's position regarding the amendments affecting the hemp industry. Thus, while HB 30 was not adopted through the usual legislative process, industry representatives nonetheless had avenues to communicate with lawmakers.

*18 (D. Md. July 30, 2025) (citing *Pulte Home Corp. v. Montgomery Cnty.*, 909 F.3d 685, 693 (4th Cir. 2018)). Courts will defer to the legislature so long as the classification is rationally related to a legitimate governmental interest. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–15 (1993); *Giarratano v. Johnson*, 521 F.3d 298, 303 (4th Cir. 2008).

Plaintiffs contend that HB 30 violates equal protection because it permits licensed marijuana retailers to sell products containing more than two milligrams of total THC while prohibiting hemp retailers from doing the same. In Plaintiffs' view, the products they currently sell are not materially more dangerous merely because they are sold by a hemp retailer rather than a marijuana retailer. Defendants respond that hemp retailers and marijuana retailers are not similarly situated because they operate under distinct statutory and regulatory regimes and that the General Assembly may rationally determine that intoxicating THC products should be sold only through the more heavily regulated marijuana market. For example, in 2022, the Commonwealth convened a task force to examine whether statutory or regulatory changes were necessary to ensure the safe and responsible manufacture and sale of industrial hemp extracts and other THC-containing substances intended for human consumption. The task force ultimately recommended, among other things, strengthening restrictions on the sale of consumable hemp products and implementing a coordinated regulatory and enforcement structure for the cannabis industry. Dkt. 36-2 at 9–10.

I find that Plaintiffs have not shown a likelihood of success on their equal protection claim. Separate statutory frameworks govern hemp products and marijuana products, with different licensing, registration, testing, tracking, and enforcement requirements. The Equal Protection Clause does not require States to regulate different commercial activities identically merely because the activities may have similarities. *See, e.g., Alabama Dep't of Revenue v. CSX*

*Transp., Inc.*, 575 U.S. 21, 28 (2015) ("[A] State may tax different lines of businesses differently

with near-impunity, even if they are apparently similar."); *Star Sci. Inc. v. Beales*, 278 F.3d 339,

353 (4th Cir. 2002) (upholding statute treating manufacturers participating in settlement

agreement differently from nonparticipating manufacturers). In this case, Defendants provided a

basis for its increased regulation of intoxicating hemp products, tying that basis to the 2022 task

force report. The General Assembly passed legislation in 2023 following the report, and the

findings of the report remain relevant and a rational basis for the new legislation.

Thus, the General Assembly could reasonably conclude that products containing

intoxicating levels of THC should be sold only through the market subject to the marijuana

licensing and regulatory framework.

### B.  Likelihood of Irreparable Harm

To establish irreparable harm, a plaintiff "must make a 'clear showing' that it will suffer

harm that is 'neither remote nor speculative, but actual and imminent.'" *Mountain Valley*

*Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th

Cir. 2019) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir.

1991)). Additionally, the harm "must be irreparable, meaning that it cannot be fully rectified by

the final judgment after trial." *Id.* (citation modified).

Plaintiffs advance two principal theories of irreparable harm.[4] First, they contend that

removal of the 25:1 ratio will cause catastrophic economic injury to their businesses, including

the loss of most of their inventory, substantial lost revenue, and the resulting loss of customers

---

[4] A plaintiff may satisfy the irreparable harm prong by showing a likely constitutional violation.
*Leaders of a Beautiful Struggle*, 2 F.4th at 346. Because I find that Plaintiffs have not shown that
Defendants likely violated the Constitution, they have also not shown a risk of irreparable harm
stemming from constitutional violations.

and goodwill. Second, they contend that the statutory amendments will expose them to criminal prosecution because products that currently qualify as hemp will, after August 15, fall within Virginia's definition of marijuana. Neither showing establishes the requisite likelihood of irreparable harm on the present record.[5]

### 1. Economic Harm

Plaintiffs have demonstrated that HB 30 will cause substantial economic harm if it takes effect as scheduled. While their individual circumstances differ, Plaintiffs contend that the majority of their inventory would become unlawful to sell under the amended statutory scheme. Testimony at the hearing indicated that Plaintiffs stand to lose a large portion of their revenue, that they expect to sustain losses of tens or hundreds of thousands of dollars, and that their businesses may no longer be financially viable. I do not discount these losses, which are substantial and place significant financial pressure on Plaintiffs' businesses.

Even so, losses capable of being compensated by money ordinarily do not constitute irreparable harm. *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) ("[I]rreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." (citation omitted)); *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) ("Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable." (citations omitted)). In *Green Room LLC v. Wyoming*, the plaintiffs sought to block enforcement of a law restricting the production, processing, and sale of hemp, and the court found that the alleged financial injury was insufficient to enjoin

---

[5] Even if Plaintiffs demonstrate irreparable harm, this factor cannot overcome a failure to make a sufficient showing of success on the merits. *See Climbing Kites LLC v. Iowa*, 739 F. Supp. 3d 742, 761 (S.D. Iowa 2024).

enforcement of the statute because a financial judgment could repair any harm and the plaintiffs had three months to prepare for new laws after the law was signed but before its effective date. No. 24-CV-128-KHR, 2024 WL 3817820, at *14 (D. Wyo. July 19, 2024), *appeal dismissed*, 157 F.4th 1196 (10th Cir. 2025); *see also N. Virginia Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 488 (4th Cir. 2025) (noting that "the plaintiffs had not shown their alleged financial harms amounted to an irreparable injury"). This case is no different. Plaintiffs' asserted losses are, at least in substantial part, economic losses capable of calculation and compensation through a monetary award. Indeed, the testimony offered at the hearing illustrates the point: Plaintiffs have identified specific percentages of lost sales, quantities of affected inventory, and dollar amounts of anticipated losses.

Plaintiffs respond that their losses will extend beyond readily calculable losses because the loss of such a substantial portion of their businesses may cause them to lose customers and goodwill permanently or ultimately force them out of business. In some circumstances, such injuries can constitute irreparable harm. *See Multi-Channel TV Cable Co.*, 22 F.3d at 552, *abrogated on other grounds by Winter*, 555 U.S. 7; *ClearOne Advantage, LLC v. Kersen*, 710 F. Supp. 3d 425, 436 (D. Md. 2024) (citing *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 442 F. App'x 776, 785 (4th Cir. 2011)). But those principles do not establish irreparable harm merely because a regulation causes a business to substantially modify its operations or become unprofitable. In *Audiology Distribution, LLC v. Hawkins*, the Fourth Circuit affirmed the denial of preliminary relief where the plaintiff asserted that it would lose customers but failed to demonstrate that "the nature of its business was such that the loss of customers would result in damages that could not be accurately measured and redressed through money damages." No. 13–2526, 578 F. App'x 260, 261 (4th Cir. 2014) (citation omitted). The relevant inquiry is whether

14

the record demonstrates a likely permanent and unquantifiable loss that cannot adequately be remedied after a final judgment. Here, while some Plaintiffs testified that they may be unable to remain in business or face bankruptcy absent preliminary relief, this testimony was largely in the nature of estimates, and Plaintiffs did not provide financial records, third-party valuations, or other documentary evidence substantiating the calculations underlying those estimates. Although such evidence is not required to establish irreparable harm, I decline to find that a substantial reduction in sales will progress to business failure or bankruptcy based on the present record. *See, e.g.*, *NJOY, LLC v. Int'l Trade Comm'n*, No. 3:25-CV-930, 2026 WL 1697073, at \*11 (E.D. Va. June 11, 2026) (finding that generalized allegations of harm to business operations are too speculative to establish irreparable harm); *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, 708 F. Supp. 2d 527, 533 (D. Md. 2010) (finding that a business-owner's speculation about market share losses is insufficient evidence of irreparable harm).

Thus, I conclude that Plaintiffs have demonstrated substantial economic injury, but not irreparable injury within the meaning of *Winter*. If Plaintiffs ultimately prevail, the lost sales, inventory losses, and other economic consequences they have identified may be compensable through appropriate monetary relief.

### 2. Potential Criminal Prosecution

Plaintiffs separately contend that they face irreparable harm because HB 30 changes the statutory definition of hemp in a manner that will cause their existing inventory to fall within Virginia's definition of marijuana. Plaintiffs reason that, because they possess substantial quantities of that inventory as commercial businesses, their continued possession could potentially subject them to criminal liability under Virginia law.

15

The statutory amendments create a significant change in the legal status of products that Plaintiffs currently possess, and the interaction between the amended definitions and Virginia's existing criminal provisions raises questions about the legal consequences of continued possession after August 15. The Court need not, however, resolve that question to determine whether Plaintiffs have demonstrated irreparable harm at this stage.

Under *Winter*, Plaintiffs must demonstrate the threatened injury is likely, not merely possible. Here, the record contains no evidence of an actual threat of prosecution. Plaintiffs do not allege that any Defendant has threatened to prosecute them, initiated an investigation, advised them that their existing inventory will be treated as contraband, or otherwise indicated an intent to enforce the criminal provisions against them. *Compare Woodruff v. W. Virginia Bd. of Regents*, 328 F. Supp. 1023, 1027 (S.D.W. Va. 1971) (finding no basis for injunctive relief where the record did not indicate "any of the defendants had invoked or threatened to invoke any provision of the Code against any of the plaintiffs"), *with Dombrowski v. Pfister*, 380 U.S. 479, 490 (1965) (finding a threat of irreparable injury where prosecutions were actually threatened). Rather, Plaintiffs contend that the statutory provisions, read together, produce that consequence. While the statutory scheme may create a colorable basis for criminal enforcement, Plaintiffs have not established that such enforcement is imminent or likely to occur. At present, the possibility of prosecution rests on a theoretical chain of statutory interpretation and enforcement decisions.[6]

I therefore do not find irreparable harm based on the asserted threat of criminal prosecution.

---

[6] Plaintiffs can avoid this fear by disposing of or otherwise destroying any product or crop which no longer complies with existing law after August 15. This is an economic loss, but not an irreparable harm as the value of the existing noncompliant inventory or crop is capable of calculation and may be compensable.

### C.  Balance of Equities and the Public Interest

The Court must "balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271 (4th Cir. 2002) (citations omitted). "[T]he balance of the equities and the public interest . . . 'merge when the Government is the opposing party.'" *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

A state is not harmed by the entry of a preliminary injunction "which prevents the state from enforcing restrictions likely to be found unconstitutional," and entry of the same is in the public's interest. *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (citations omitted). However, because Plaintiffs have not made a showing of likely success on the merits, they also have not shown the balance of equities and public interest favor entry of a preliminary injunction. The Commonwealth, on the other hand, has an important interest in implementing legislation enacted by the General Assembly and signed into law by the Governor. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (quoting *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977)). Preventing the Commonwealth from implementing HB 30 on its legislatively prescribed effective date would interfere with the Commonwealth's ability to enforce the regulatory scheme chosen by its elected representatives.

The public-interest considerations underlying HB 30 likewise weigh against preliminary relief. The new restrictions principally regulate the sale of hemp products according to their total THC content. The Commonwealth has identified public health and safety concerns associated with intoxicating hemp products and determined that changes to Virginia's regulatory framework

are warranted. *See, e.g.*, Dkt. 36-2 at 4–85. The Court need not determine whether the General

Assembly made the best policy choice or whether the evidence supporting the legislative

judgment is persuasive where the Commonwealth has identified legitimate regulatory interests

and Plaintiffs are not likely to establish that the legislation is constitutionally infirm. Thus, the

balance of the equities and the public interest weigh against injunctive relief.

### IV.    Conclusion

Because Plaintiffs have not demonstrated either a likelihood of success on the merits or

irreparable injury if HB 30 becomes effective, and because the balance of equities and the public

interest weigh in favor of Defendants, the Motions for Preliminary Injunction (Dkt. 4) and

Temporary Restraining Order (Dkt. 5) are **DENIED**. An appropriate order shall issue.

Entered:  August 14, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

18